James D. RAY, Plaintiff-Appellant,

v.

The TENNESSEE VALLEY AUTHORITY, et al., Defendants-Appellees.

No. 81–7339.

United States Court of Appeals, Eleventh Circuit.

June 4, 1982.

Rehearing and Rehearing En Banc Denied Aug. 3, 1982.

---

James D. Ray, pro se.

Larry W. Harper, William T. Mills, Birmingham, Ala., for Jack Drake.

Herbert S. Sanger, Jr., Justin M. Schwamm, Sr., Thomas F. Fine, David W. Miller, Knoxville, Tenn., for Tennessee Valley Authority.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN *, District Judge.

KRAVITCH, Circuit Judge:

James D. Ray appeals from the district court's grant of summary judgment on his claims against the Tennessee Valley Authority and his former attorney, Jack Drake. On appeal Ray argues that the district court erred in dismissing his breach of contract claim against TVA on the basis of res judicata; that his claim based on the violation of his veteran's reemployment rights is not barred by the statute of limitations; that his claim of defamation by a TVA employee states a proper federal cause of action; and that the court's dismissal of his malpractice action against his court-appointed attorney Jack Drake for lack of subject matter jurisdiction was improper. For the reasons stated below, we affirm.

## I. Background

Appellant Ray was formerly a research chemist for the TVA. In 1973, appellant's employment with the TVA was terminated by a reduction-in-force action (RIF). Ray appealed his dismissal to the Civil Service Commission, which decided against him, then filed suit against the TVA in federal court on June 20, 1974. In this action Ray sued for review of the Civil Service Commission decision and also alleged that the RIF violated his civil rights under 42 U.S.C. §§ 1983, 1985. The substance of Ray's complaint was that the RIF was a sham and that he had been improperly terminated by the TVA.[1] The district court ruled against Ray on defendants' motion for summary judgment. Ray appealed, and his appeal

---

* The Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. Specifically, Ray alleged that he was terminated because of a difference in religious beliefs from his supervisor at TVA.

was dismissed by the former Fifth Circuit as untimely.[2]

In 1980, Ray attempted to relitigate his claims by intervening in a race discrimination suit against the TVA.[3] The district court denied intervention on the basis of res judicata, and the Fifth Circuit affirmed.[4]

This appeal results from Ray's third venture into the federal courts for redress of his grievances against the TVA. Ray's complaint contained three counts. Count I alleged that his termination by the 1973 RIF was improper and breached his contract of employment with TVA. Ray also asserted in this count that TVA had violated his reemployment rights under the Veteran's Preference Act, ch. 287, 58 Stat. 387 (1944). In count II Ray asserted that he had been defamed by a TVA employee, and count III alleged malpractice against Jack Drake, the attorney appointed by the court to assist Ray in his original 1974 lawsuit. Drake moved to dismiss count III for failure to state a claim on which relief could be granted and lack of subject matter jurisdiction. The motion was granted by the trial court. TVA then moved for summary judgment on counts I and II. The court held that count I was barred by res judicata and the statute of limitations, and that count II was a pendent state claim which lacked a jurisdictional base once count I was dismissed. Accordingly, the court granted TVA's motion for summary judgment.

II. The Breach of Contract Claim

■ Res judicata ensures the finality of decision; under the doctrine, a final judgment on the merits bars further claims by the parties based on the same cause of action. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981).

For a prior judgment to bar a subsequent action, it is firmly established (1) that the prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits.

*Stevenson v. International Paper Co.*, 516 F.2d 103, 108 (5th Cir. 1975). The first three elements of this test unquestionably are met in this case. A final judgment was rendered by a court of competent jurisdiction in Ray's 1974 lawsuit against the TVA. Thus in determining whether res judicata bars Ray's "breach of contract" claims the key issue is whether the claim constitutes the same "cause of action" as in his original 1974 lawsuit.

■ The principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case. *White v. World Finance of Meridian, Inc.*, 653 F.2d 147, 150 (5th Cir. 1981); *Commercial Box & Lumber Co., Inc. v. Uniroyal, Inc.*, 623 F.2d 371, 374 (5th Cir. 1980); *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1980). As the former Fifth Circuit observed, in determining whether the causes of action are the same, the substance of the actions, not the form, controls. *White v. World Finance of Meridian, Inc., supra; Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 961 (5th Cir. 1968); *Acree v. Air Line Pilots Association*, 390 F.2d 199, 201 (5th Cir.), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968).

■ Applying these principles to the facts before us, we agree with the district judge that Ray's breach of contract claim is barred by res judicata. In each suit the primary right at issue was Ray's right of continued employment with the TVA, and in each suit Ray alleged that TVA inter-

---

**2.** *Ray v. Tennessee Valley Authority*, 521 F.2d 812 (5th Cir. 1975), *cert. denied*, 424 U.S. 973 (1976). Although the appeal was dismissed as untimely, the court stated that it had reviewed the merits of the case and found no error.

**3.** *Eastland v. Freeman*, No. 73–G–487–NW (N.D.Ala., filed May 21, 1973).

**4.** *Eastland v. Tennessee Valley Authority*, 638 F.2d 1232 (5th Cir. 1981).

fered with that right by terminating his employment through a pretextual RIF. In substance, if not in form, the breach of contract alleged by Ray in this suit is identical to his claims in the 1974 litigation and thus falls squarely within res judicata doctrine.

### III. The Reemployment Rights Claim

 Count I of Ray's complaint also alleged that the TVA had violated Ray's reemployment rights under the Veteran's Preference Act. We find this claim barred for two reasons. First, Ray has admittedly known of the reemployment rights claim since his original complaint in 1974. In fact, Ray asserts as part of his malpractice claim against Drake that Drake failed to raise the reemployment rights issue in the 1974 lawsuit. As we noted above, application of res judicata requires the existence of four elements. Once a court determines that these elements exist, however, res judicata bars subsequent litigation "not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery *which might have been presented." Jones v. Texas Tech University,* 656 F.2d 1137, 1141 (5th Cir. 1981) (quoting *Stevenson,* 516 F.2d at 108–09 (emphasis added)); *Commercial Box & Lumber v. Uniroyal, Inc.,* 623 F.2d 371, 373 (5th Cir. 1980). After reviewing the record, we conclude that Ray's breach of contract claim and the alleged violation of his Veteran's Preference Act rights are substantially the same cause of action. We also find that substantially the same facts would be involved in support of each cause of action. *See Stevenson, supra,* 516 F.2d at 109. The claim under the Act, therefore, is an alternative theory of recovery for his termination from TVA, and Ray's failure to incorporate this theory into his earlier lawsuit bars the claim under res judicata principles.

 Second, even if Ray's claim was not subject to the bar of res judicata, it is untimely. Numerous Supreme Court and former Fifth Circuit precedents have reiterated the rule that when a federal statute granting a cause of action fails to include a limitations period, a federal court should look to the state statute of limitations governing the state action most closely analogous to the federal action. *E.g., United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1981); *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Vigman v. Community National Bank & Trust Co.,* 635 F.2d 455, 459 (5th Cir. 1981); *Ingram v. Steven Robert Corp.,* 547 F.2d 1260, 1261–62 (5th Cir. 1977). Of course, if the state limitations period is so short as to interfere with federal policies, it will not be applied to the federal action. *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977); *Franklin v. City of Marks,* 439 F.2d 665, 669 (5th Cir. 1971).

Here, Ray's claim that the TVA violated his rights under the Veteran's Preference Act is most analogous to state actions for "injury to the person or rights of another not arising from contract," which in Alabama are subject to a one-year limitations period. Ala.Code § 6–2–39(a)(5). *See Rubin v. O'Koren,* 621 F.2d 114, 116 (5th Cir. 1980), *on rehearing,* 644 F.2d 1023 (5th Cir. 1981) (one-year limitations period applies to civil rights actions under 42 U.S.C. § 1983); *Sewell v. Grand Lodge of the International Association of Machinists and Aerospace Workers,* 445 F.2d 545, 548–50 (5th Cir. 1971), *cert. denied,* 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (one-year period applies to suit under the federal labor laws for wrongful discharge); *United Klans of America v. McGovern,* 453 F.Supp. 836, 839–40 (N.D.Ala.1978), *aff'd,* 621 F.2d 152 (5th Cir. 1980) (one-year period applies to claims by Ku Klux Klan that FBI officers violated its constitutional rights). Moreover, we conclude on the basis of these precedents that the one-year limitations period of Alabama law is not so short as to frustrate federal policy. *Cf. Franklin v. City of Marks, supra,* 439 F.2d at 669 (court refused to adopt 10-day limitations period

for a § 1983 action). From the record in this case, the fact is undisputed that Ray knew of his reemployment rights claims in 1974. Hence even if Ray's claim was not prohibited by res judicata, the time for filing his claim lapsed in 1975 and is now barred by the applicable statute of limitations.

## IV. The Slander Claim

█ In count II of his complaint Ray alleged that he had been slandered by a TVA employee in October of 1979 when the employee stated that the TVA had "fired Jim Ray" and that Ray had been the only management-level employee ever "fired" by the agency. The district court found that this claim did not state a federal cause of action under the authority of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Ray, on the other hand, asserts that here the slander was in connection with a discharge from employment which *Paul* and other cases specifically recognized would be adequate to state a federal cause of action under the due process clause.[5]

Although we agree with the trial court that Ray's claim does not state a federal action, we do not find this issue as easy to resolve as did the trial court. In *Paul*, the plaintiff Davis' name and photograph had been included in a list of "active shoplifters" circulated by the police to local merchants. Although Davis had been charged with shoplifting approximately 18 months earlier, he had not been brought to trial at the time of the distribution of the "active shoplifters" list, and the charges later were

dropped. Davis sued the police chief under 42 U.S.C. § 1983, asserting that even though he had not lost his job, the list would impair future employment opportunities and interfere with his ability to shop in local businesses. The Supreme Court held that the injury to reputation alone was not actionable under § 1983, reasoning that federal law recognized an injury to reputation only when reputation was stigmatized in connection with a denial of "some more tangible interest, such as employment," or other constitutional rights. *Paul, supra,* 424 U.S. at 701, 710 n.5, 96 S.Ct. at 1160, 1165 n.5.[6]

Subsequent to *Paul,* the Supreme Court in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) made explicit what already was apparent from the structure of the *Paul* opinion: that injury to reputation in connection with an official discharge from employment was a cognizable federal claim. In *Owen* the Court stated:

> *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." In *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), we explained that the dismissal of a government employee accompanied by a "charge against him that might seriously damage his standing and associations in his community" would qualify as something "the

---

5. The essence of Ray's complaint was that the slander deprived him of liberty and property interests without due process of law. The cases discussed in this section of the opinion all deal with claims brought under the due process clause of the fourteenth amendment, which is applicable only to state action. Because Ray's claim is against a federal employee, it is grounded instead on the due process guaranty of the fifth amendment.

6. The Court also noted that the due process guarantees would apply if a state sought to remove or significantly alter a state-created right. In *Paul,* however, the state of Missouri offered no protection of reputation beyond a tort action for vindicating his good name,

hence the Court found no infringement of a protected right. Although Ray alleges that Alabama does specially protect reputation in its criminal law, citing Ala.Code § 13A–11–160, that section pertains only to libel, not slander, and then only if the libel "tends to provoke a breach of the peace." Neither is Ala.Code § 13A–11–163 applicable to this case. That section pertains only to slander involving an accusation that the person slandered committed a felony or other crime involving "moral turpitude," which does not encompass the slander at issue here. *Cf. Marrero v. City of Hialeah,* 625 F.2d 499, 514–15 (5th Cir. 1980) (noting that Florida law does recognize a property interest in business goodwill).

government is doing to him," so as to trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name. In the present case, the city—through the unanimous resolution of the City Council—released to the public an allegedly false statement impugning petitioner's honesty and integrity. Petitioner was discharged the next day. The Council's accusations received extensive coverage in the press, and even if they did not in point of fact "cause" petitioner's discharge, the defamatory and stigmatizing charges certainly "occur[red] in the course of the termination of employment." *Cf. Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). Yet the city twice refused petitioner's request that he be given written specifications of the charges against him and an opportunity to clear his name. Under the circumstances, we have no doubt that the Court of Appeals correctly concluded that the city's actions deprived petitioner of liberty without due process of law.

*Owen, supra,* 445 U.S. at 633 n.13, 100 S.Ct. at 1406 n.13.

Shortly after *Owen* the former Fifth Circuit exhaustively reviewed *Paul,* its ancestors, and its progeny in a suit alleging that a local prosecutor had defamed the plaintiffs in connection with an illegal search and seizure. *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir. 1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). After analyzing the various precedents, the *Marrero* court concluded:

> [I]t is now apparent that the defamatory communication need not cause the loss of the protected right, or more tangible interest, in order to satisfy the stigma-plus requirement of *Paul.* Instead, it is sufficient that the defamation occur in connection with, and be reasonably related to, the alteration of the right or interest.

*Marrero, supra,* 625 F.2d at 519. The court, moreover, noted that each defamation case which permitted the action to go forward under federal law involved a situation in which the public would have perceived the defamation as connected to the deprivation of the "more tangible" right. *Id.*

Applying this test to the facts before us, we find that the defamation alleged by Ray did not "occur in connection with" the asserted deprivation of employment nor was it "reasonably related to" that deprivation. This conclusion stems from the concurrence of two factors. First, the TVA employee who allegedly defamed Ray was a budget officer who had no connection whatsoever with the personnel decisions of the agency. It is unlikely, therefore, that the public would perceive the defamation as connected to the official termination of Ray by the appropriate authorities.[7]

Second, the alleged defamation occurred some six years after the TVA's RIF action against Ray. While we hesitate to set a temporal limit on the relationship between the alleged defamation and the other deprivation action, in this case we find that the long time lapse strengthens our conclusion that the alleged defamation was not connected to the employment termination. Given the conjunction of these two factors, we hold that the relationship between alleged defamation and alleged deprivation of employment was so attenuated that the defamation claim failed to state a federal cause of action under the principles of *Paul v. Davis.*

■ Because Ray's defamation claim fails to state a federal cause of action, the claim can go forward only if it falls within the doctrine of pendent jurisdiction which permits a federal tribunal to hear state law claims not otherwise cognizable in federal court. Pendent jurisdiction encompasses

---

**7.** Of course, situations may arise in which a defamatory statement by a person other than those responsible for the government deprivation of the "more tangible" right (here, the termination of Ray's employment) nevertheless is sufficiently connected to the action to meet *Paul's* requirements. The defamer, for example, may be operating under the authority or with the approval of those who deprived the plaintiff of the "plus" right. The record here, however, fails to show any such connection.

two elements. First, for the federal court to have power to hear the state claims, the court "must have jurisdiction over a substantial federal claim and the federal and state claims must arise from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb*, 635 F.2d 462, 470 (5th Cir. 1981) (quoting *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Even when the power to hear the claim exists, the decision to exercise that power is discretionary with the trial judge. *Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139; *Jackson, supra*, 635 F.2d at 470–71.

Here, even assuming that the power existed for the trial court to hear the pendent claim, the court's refusal to exercise this jurisdiction was not an abuse of discretion. The only federal claims Ray asserted were the breach of contract and reemployment rights violations claims against the TVA which the trial court correctly decided in favor of the TVA on summary judgment. As the Supreme Court reasoned in *Gibbs*, "Certainly if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139. *See Tinker v. DeMaria Porsche-Audi, Inc.*, 632 F.2d 520, 523 (5th Cir. 1980) (trial court properly refused to exercise authority to hear state law claims relating to automobile purchase once federal claims were dismissed); *United States ex rel. Glynn v. Capeletti Brothers, Inc.*, 621 F.2d 1309, 1317–18 (5th Cir. 1980) (court properly declined to hear state claim after dismissing federal claim). Accordingly, we find no error in the trial court's refusal to entertain the slander claim.

## V. The Malpractice Claim

Count III of Ray's complaint alleged malpractice against Jack Drake, an attorney appointed by the district court to assist Ray in his original 1974 lawsuit.[8] Drake motioned the district court to dismiss the malpractice claim on the grounds that it failed to state a claim on which relief could be granted and that the court lacked subject-matter jurisdiction. The court granted this motion without opinion.

We need not decide whether Ray's count III stated a proper claim for relief, because we conclude that the trial court lacked subject matter jurisdiction over the malpractice action. Because both Ray and Drake are citizens of the same state, Alabama, the court lacked diversity jurisdiction under 28 U.S.C. § 1332. Nor does the malpractice claim present a federal question. As this court recently observed:

> For a case to arise under federal law, a right or immunity created by that law must be an essential element of the plaintiff's claim; the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another. *Maxwell v. First Nat'l Bank of Monroeville*, 638 F.2d 32, 35 (5th Cir. 1981); *In Re Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980), *citing Gully v. First Nat'l Bank of Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). In order to determine whether the claim arises under the Constitution or laws of the United States, we look to the complaint unaided by anticipated defenses and with due regard to the real nature of the claim. *Maxwell*, 638 F.2d at 35; *Gully*, 299 U.S. at 113, 57 S.Ct. at 98.

*Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982). Here, the "real nature" of Ray's claim against Drake is that Drake is guilty of malpractice under Alabama law. No federal right or immunity is involved in this claim and therefore federal question jurisdiction is lacking.[9] Finally, Ray's assertion that the

---

**8.** The court appointed Drake pursuant to 42 U.S.C. § 2000e–5(f)(1).

**9.** Ray argues that *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d

488 (1980) and *Woodburn v. Turley*, 625 F.2d 589 (5th Cir. 1980) support his argument that federal jurisdiction exists over the malpractice claim. Neither case, however, has anything to do with jurisdiction. *Roadway Express* dealt

malpractice claim falls under the pendent jurisdiction doctrine is incorrect. As we discussed above, a state law claim may proceed under pendent jurisdiction only if it and the federal claims presented arise from a "common nucleus of operative fact." The only federal claims presented in this case are Ray's claims against the TVA arising from the 1973 RIF. The malpractice claim, however, relates to the prosecution of the 1974 lawsuit against the TVA, not the 1973 RIF. The malpractice claim therefore is wholly separate from the federal claims both as to the facts necessary to prove the claim and the theory of recovery. Hence, we conclude that the malpractice claim and the federal claims did not arise from a "common nucleus of operative fact" and consequently the district court lacked the power to hear the malpractice claim. *See, e.g., Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1033 (2d Cir. 1979) (where breach of contract claim lacked independent jurisdictional base and facts relating to that claim were separate from facts relating to federal securities law claim, court lacked power to hear claim under pendent jurisdiction); *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 847–48 (4th Cir. 1974) (plaintiff's claim against employer for failure to make payments allegedly due under profit-sharing program and federal claim that employer failed to provide certain information required by 29 U.S.C. § 308(b) were "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count;" consequently, claims did not arise from a "common nucleus of operative fact."). Because no theory of jurisdiction supports the malpractice action, the trial court properly granted Drake's motion to dismiss.

AFFIRMED.

with an award of attorney's fees incidental to a lawsuit which was based on federal question jurisdiction. *Woodburn* did involve a malpractice suit brought in federal court but the case fails to even mention jurisdiction and the consistent application of Texas law indicates that diversity jurisdiction was involved.