**COMMONWEALTH OF PENNSYLVANIA and Raymond Williams, et al.**

v.

**LOCAL 542, INTERNATIONAL UNION OF OPERATING ENGINEERS, et al.**

**Civ. A. No. 71–2698.**

United States District Court, E.D. Pennsylvania.

Aug. 8, 1983.

Joel M. Ressler, Harrisburg, Pa., for Com. of Pa.

Harold I. Goodman, Philadelphia, Pa., for Raymond Williams, et al.

Kenneth I. Jonson, Douglas C. Herbert, Jr., Washington, D.C., for Local Union 542.

John J. McAleese, Jr., Thomas J. McGoldrick, Bala Cynwyd, Pa., for JATC and Contractor Associations and Glasgow, Inc.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

In this employment discrimination class action the Court held that Local 542, International Union of Operating Engineers and the Joint Apprenticeship Training Committee intentionally discriminated against minorities in the operating engineers trade throughout the Eastern Pennsylvania and Delaware areas in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. *Commonwealth of Pennsylvania v. Local Union 542,* 469 F.Supp. 329 (E.D.Pa.1978), *affirmed per curiam,* 648 F.2d 922 (3d Cir. 1982). The Court also held that plaintiffs failed to prove that the contractor associations or contractors viewed as a class were actually aware of the union discrimination affecting the employment of minority persons throughout the operating engineers industry in Local 542's jurisdiction. *Commonwealth of Pennsylvania v. Local Union 542,* 469 F.Supp. 329, 401 (E.D.Pa.1978). The Court held, however, that the contractor associations and contractors were injunctively liable under 42 U.S.C. § 1981 because of their contractual relationship to the union hiring hall. *Commonwealth of Pennsylvania v. Local Union 542,* 469 F.Supp. 329 (E.D.Pa.1978), *affirmed per curiam,* 648 F.2d 923 (3d Cir.1982). The Court's finding of vicarious liability on the part of the contractor associations and contractors was reversed by the United States Supreme Court. *General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Presently before the Court is the motion of individual and class plaintiffs for leave to amend the complaint. For the reasons which follow, plaintiffs' motion will be denied.

## I. FACTS

On November 8, 1971, this employment discrimination action was brought by the Commonwealth of Pennsylvania and twelve

black plaintiffs, individually and on behalf of a class of minority plaintiffs, alleging a pattern of racial discrimination by Local 542, International Union of Operating Engineers ("Local 542") and the Joint Apprenticeship Training Committee ("JATC"). Also named as defendants were four contractor associations—General Building Contractors Association, Inc. ("GBCA"); Contractors Association of Eastern Pennsylvania ("CAEP"); United Contractors Association ("UCA"); and Pennsylvania Excavating Contractors Association ("PECA")—as representatives of a defendant class of contractor associations who had been parties to a collective bargaining agreement with Local 542 and Glasgow, Inc. ("Glasgow") as the representative of a defendant class of contractor-employers who had been parties to a collective bargaining agreement with Local 542 and who employed operating engineers referred to them by Local 542.

Plaintiffs contended that Local 542's exclusive hiring hall system discriminated against blacks and other minorities in Eastern Pennsylvania and Delaware with respect to union membership and job referrals in the operating engineer trade. Complaint, ¶¶ 16–33. This union hiring hall system was agreed to by the contractors and contractor associations in 1961 following a lengthy strike, and has been included in collective bargaining agreements to this day. Plaintiffs also contended that defendant contractor associations and contractor-employers participated in, sustained, and perpetuated the policy and practice of racial discrimination, Complaint, ¶¶ 41–42, and had knowledge of Local 542's and the JATC's discriminatory practices, acceded to them, and conspired with Local 542 and the JATC to deprive minority members equal employment opportunities in the operating engineers craft, Complaint ¶¶ 43–46. At the core of the complaint was a Title VII employment discrimination claim brought against Local 542 alleging the intentional exclusion of blacks and other minorities from union membership and discrimination against minority union members with respect to job referrals and employment opportunities. Title VII allegations were also leveled at the JATC which administered the four year apprenticeship training program in cooperation with the contractor-employers and Local 542. Plaintiffs contended that the class of contractor associations and class of contractor-employers had knowledge of the union's discriminatory practices, acceded to them, and conspired with defendants Local 542 and the JATC to deprive minorities of equal employment opportunities in the operating engineer trade. These latter claims served as the bases for the 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.* claims. Finally, plaintiffs asserted violations of the Labor Management Relations Act, 29 U.S.C. § 185, and the Thirteenth and Fourteenth Amendments to the United States Constitution.[1]

On March 13, 1972, the Court granted plaintiffs' motion for leave to maintain the action as a class action as to class defendants under Fed.R.Civ.P. 23(b)(2) and certified the following defendant subclasses:

(a) all contractor associations which are, or may be, parties to a collective bargaining agreement with Local 542, Interna-

---

1. Plaintiffs' complaint contained nine counts:
   Count I—violation of 42 U.S.C. § 1981 by all defendants
   Count II—violation of 42 U.S.C. § 1983 by all defendants
   Count III—violation of 42 U.S.C. § 1985(3) by all defendants
   Count IV—violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* by all defendants
   Count V—violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* by all defendants

Count VI—violation of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 by defendant Local 542
Count VII—violation of Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.* by all defendants
Count VIII—violation of Thirteenth Amendment to United States Constitution by all defendants
Count IX—violation of Fourteenth Amendment to United States Constitution by all defendants

tional Union of Operating Engineers; and

(b) all contractor-employers who are subject to collective bargaining agreements with Local 542, International Union of Operating Engineers, and who, pursuant to such agreements, employ or will employ operating engineers referred to them by defendant Local 542.

Three years of discovery followed. On May 8, 1973, plaintiffs filed their proposed final pretrial order. In that order plaintiffs set forth the following facts which they intended to prove against the contractor associations and contractor-employers at trial:

The defendant contractor associations and contractor-employers have had knowledge of the fact that defendant Local 542 and defendant JAC control the entry of substantially all operating engineers into the labor market embraced by Local 542's territorial jurisdiction. They have also had knowledge of Local 542's and JAC's discriminatory practices, have acceded to them, and conspired with defendants Local 542 and JAC to deprive minority group members of equal employment opportunity in the operating engineers craft. Nonetheless, defendant contractor associations and contractor-employers, *with the intent of discriminating against plaintiffs and the class they represent,* have continued to contract with defendant Local 542 and to participate in the apprenticeship program administered by defendant JAC.

(Docket Entry # 163) (emphasis added). In January and February 1974, a "Legal Notice," prepared by the Hon. A. Leon Higginbotham, Jr. and dated December 27, 1973, was forwarded by direction of the Court to potential defendant class members, certified mail, return receipt requested. Judge Higginbotham's "Legal Notice" stated:

As a result of an order of this Court of March 13, 1973, which designates the subject action as *a class action,* any judgment therein, whether for or against those against whom the subject action is directed, will apply to the following classes:

(a) all contractor associations which are, or may be, parties to a collective bargaining agreement with Local Union 542, International Union of Operating Engineers; and

(b) all contractor-employers who are subject to collective bargaining agreements with Local Union 542, International Union of Operating Engineers, and who pursuant to such agreements, employ or will employ operating engineers referred to them by Local Union 542.

(Emphasis added). On September 25, 1975, plaintiffs moved for a bifurcation of trial. Letter from Harold I. Goodman to Hon. A. Leon Higginbotham, Jr. and Proposed Order (September 25, 1975). On October 3, 1975, the Court granted the motion and ordered

that the trial in this case shall be bifurcated as follows:

1. When the hearing commences the Court will consider evidence relating to Plaintiffs' claims of racial discrimination by the defendants. After this hearing is concluded, the Court will render judgment on the merits of Plaintiffs' claims and the nature of the relief, if any, to which the individually named and class plaintiffs are entitled. The Court may thereupon order such individual and class relief as is just and proper;

2. If the Court enters judgment on the merits for the plaintiffs, there shall be scheduled, at a time and place to be determined by the Court, a hearing on all claims for specific monetary relief which may be asserted by the individually named and class plaintiffs. The assessment and allocation of such specific monetary relief against the individually named and class defendants will be determined at said hearing.

(Docket No. 304).

Following considerable discovery and delay,[2] the non-jury trial on the issue of liabil-

---

**2.** *See Commonwealth of Pa. v. Local 542,* 347 F.Supp. 268 (E.D.Pa.1972), *aff'd,* 478 F.2d 1398

ity commenced on January 19, 1976, and ended on June 28, 1977. Lengthy testimony and complex statistical evidence was presented by both sides during the one hundred thirty-nine days of trial before Judge Higginbotham. On January 2, 1979, the Court released from impoundment its liability opinion dated November 30, 1978. *Commonwealth of Pennsylvania v. Local Union 542,* 469 F.Supp. 329 (E.D.Pa.1978). The Court held that Local 542 and the JATC intentionally discriminated against minorities in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981. 469 F.Supp. at 394–401. The Court found, however, that "the plaintiffs have failed to prove on a preponderance of the evidence that the associations or contractors *viewed simply as a class* were actually aware of the union discrimination affecting the employment of minority persons throughout the operating engineer industry in Local 542's jurisdiction." 469 F.Supp. at 401. (Emphasis added). The Court stated: "Although plaintiffs have failed to show intent to discriminate by the employers as a class, and indeed have been unable to show knowledge or notice of discrimination by that class as a whole, plaintiffs have shown that the requisite relationship exists among employers, associations, and union to render applicable the theory of *respondeat superior,* thus making employers and associations liable injunctively for the discriminatory acts of the union." 469 F.Supp. at 412–413. As a result, the Court found that the contractor associations and contractors were injunctively liable to the plaintiff class because of their contractual relationship to and use of the hiring hall system under 42 U.S.C. § 1981. 469 F.Supp. at 401–402. On No-

vember 7, 1979, the Court released from impoundment its final Judgment and Decree dated August 8, 1979, which granted the plaintiff class specific injunctive relief under a five year program which included hour and wage percentage goals, requirements for training and upgrading, and other forms of equitable relief. *Commonwealth of Pennsylvania v. Local Union 542,* 502 F.Supp. 7 (E.D.Pa.1979).

On May 19, 1981, the United States Court of Appeals affirmed the judgment of the district court both with respect to the appeals of Local 542 and the JATC, *Commonwealth of Pennsylvania v. Local Union 542,* 648 F.2d 922 (3d Cir.1981), and the appeals of the contractor associations and contractors, *Commonwealth of Pennsylvania v. Local Union 542,* 648 F.2d 923 (3d Cir.1981). On June 29, 1982, the United States Supreme Court reversed the judgment of the Court of Appeals insofar that injunctive liability was imposed pursuant to 42 U.S.C. § 1981 on the contractor associations and contractors in the absence of intentional discrimination and remanded for further proceedings consistent with its opinion. *General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 402, 102 S.Ct. 3141, 3156, 73 L.Ed.2d 835 (1982).

Plaintiffs now seek to amend their complaint. Plaintiffs seek to (1) add as named defendants forty contractor-employers; (2) assert individual claims of intentional discrimination in employment against named defendant Glasgow and the forty additional contractor-employers; and (3) assert individual claims of intentional racial discrimination against the named defendant contractor associations. A hearing was held on

(3d Cir.1973) (order granting injunction pendente lite); *Commonwealth of Pa. v. Local 542,* 388 F.Supp. 155 (E.D.Pa.1974), No. 74–2281 (3d Cir. Dec. 30, 1974) (denying petition for writ of mandamus after denial of motion seeking recusal of trial court); Order (3d Cir. Feb. 25, 1975) (denying petition for stay pending application for certiorari), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Commonwealth of Pa. v. Local 542,* No. 74–1772 (3d Cir. July 27, 1975) (order denying petition for writ of mandamus and for writ of prohibition), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d

837 (1975); *Commonwealth of Pa. v. Local 542,* No. 76–1290 (3d Cir. March 10, 1976) (order denying writ of mandamus); *Commonwealth of Pa. v. Local 542,* No. 76–1331 (3d Cir. March 17, 1976) (order denying supplemental petition for writ of mandamus and the supplemental petition for stay); *Commonwealth of Pa. v. Local 542,* 73 F.R.D. 544 and 551 (E.D.Pa.1976), *aff'd,* 552 F.2d 498 (3d Cir.), *cert. denied sub nom., Freedman v. Higginbotham,* 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977) (criminal contempt order and denial of stay).

June 21, 1983. Plaintiffs' claims against Local 542 and the JATC for damages and back pay were settled for $1,500,000.00 under a Consent Decree approved by the Court on December 15, 1982. *Commonwealth of Pennsylvania v. Local Union 542,* 555 F.Supp. 1109 (E.D.Pa.1982).

## II. DISCUSSION

### A. *Res Judicata*

■ The contractor associations and contractors contend that plaintiffs are barred by res judicata from amending their complaint and asserting individualized claims of intentional discrimination. The principle of res judicata provides:

[W]hen a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578–579, 94 S.Ct. 806, 811–812, 39 L.Ed.2d 9 (1974). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The principles of res judicata are based on the doctrine that "[a] party cannot escape the requirements of full faith and credit and res judicata by asserting its own failure to raise matters clearly within the scope of a prior proceeding." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1889 n. 4, 72 L.Ed.2d 262 (1982). The purpose of res judicata is to bar "repetitious suits involving the same cause of action. [The bar] rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Sea-Land Services, Inc. v. Gaudet, supra.* Res judicata applies to claims that were actually litigated or claims that could have been reasonably litigated. *Id.*

■ In the present case, plaintiffs had a full and fair opportunity to assert individualized claims of intentional discrimination against the contractor associations and contractor-employers but chose to proceed on a class-wide theory of intentional discrimination and vicarious liability against them. Plaintiffs made an informed and deliberate tactical decision to proceed in this manner before, during, and after trial. This fact is readily evidenced by the allegations of plaintiffs' complaint, plaintiffs' motion for class certification, plaintiffs' proposed final pretrial order, counsel's statements during trial, plaintiffs' proposed findings of fact, and plaintiffs' memorandum on the binding effect of defendant class. Plaintiffs' theory against the contractor associations and contractor-employers was as follows: (1) the class of contractor associations and class of contractor-employers knew of the racial discrimination, acceded to it, and intentionally discriminated against plaintiffs, and (2) the class of contractor associations and class of contractor-employers were liable under principles of *respondeat superior* because of their contractual relationship to and use of the union hiring hall system. The Court rejected plaintiffs' first contention by finding that there was no class-wide intentional discrimination by defendant class of contractor associations or defendant class of contractor-employers. *Commonwealth of Pennsylvania v. Local Union 542, supra,* 469 F.Supp. at 401. This finding was not challenged by plaintiffs on appeal. *See General Building Contractors Association v. Pennsylvania, supra,* 102 S.Ct. at 3145. The Court, however, adopted plaintiffs' second theory and held that the contractor associations and contractor-employers were vicariously liable because of their contractual relationship to and use of the union hiring hall. *Commonwealth of Pennsylvania v. Local Union 542, supra,* 469 F.Supp. at 401–413. This finding was reversed on appeal by the United States Supreme Court. *General Building Contractors Association v. Pennsylvania, supra.* Defendants contend that plaintiffs have had their day in court— actually one hundred and thirty-nine days

in court—and are now precluded from asserting an alternative theory for recovery, that of individualized liability. Defendants argue that the principles of res judicata protect both the named and unnamed members of defendant class.

To reopen the litigation after one and one-half years of trial and over eleven years of litigation is contrary to the sound policies behind the finality of judgments. Plaintiffs claimed intentional discrimination on a class-wide basis and lost. Plaintiffs' alternative theory for liability under *respondeat superior* was rejected by the Supreme Court. Plaintiffs are now precluded from asserting individualized claims of intentional discrimination because they chose not to assert such claims before, during, and after trial. The findings against plaintiffs with respect to defendant class are binding with respect to named and unnamed members of defendant class. Fed.R.Civ.P. 23(b)(2) and *Notes of Advisory Committee* (1966 Amendment). *See also Kalodner v. Board of Education of Philadelphia School District,* 558 F.Supp. 1124, 1126 (E.D.Pa.1983). Since res judicata applies to claims that *could have been litigated,* plaintiffs' motion to amend must be denied.

B. *Undue Delay and Unfair Prejudice*

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." The grant or denial of a motion for leave to amend is within the sound discretion of the district court and will be reversed only for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Heyl & Patterson International Inc. v. F.D. Rich Housing,* 663 F.2d 419, 425 (3d Cir.1981), *cert. denied,* 445 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). In *Foman v. Davis, supra,* the Supreme Court set forth the guidelines governing motions to amend under Rule 15(a) as follows:

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. at 182, 83 S.Ct. at 230.

■ In the present case, plaintiffs now seek to advance individualized claims of intentional discrimination against the contractor associations and contractor-employers after having lost on class-wide claims of intentional discrimination both before the district court and the United States Supreme Court. On March 14, 1983, plaintiffs filed their present motion to amend. This is eleven years after the filing of the original complaint on November 8, 1971, and five years since the trial record was closed on June 28, 1977. Moreover, the case has been heard by both the United States Court of Appeals and the United States Supreme Court. Plaintiffs could have advanced individualized claims at trial but chose, instead, to proceed on a class-wide approach by seeking and obtaining class action certification of defendant classes and seeking and obtaining bifurcation into a liability stage ("Stage I") and damages stage ("Stage II") of the trial. Plaintiffs lost on the class-wide theory of intentional discrimination at the liability trial but prevailed on the vicarious liability theory until reversed by the

United States Supreme Court. The liability trial ended on June 28, 1977. The damages trial has now been settled with respect to Local 542 and the JATC. Plaintiffs have unduly delayed in presenting their alternative individualized theories for liability. This delay has resulted in substantial prejudice to defendants. This case has been pending for eleven years. The contractor associations and contractor-employers defended against the class-wide theory at both the district court and appellate court levels. An individualized approach would now require new discovery and a new joinder of third-party defendants. Moreover, defendants have been prejudiced by the loss of essential witnesses and vital records with respect to the operation of their businesses. Plaintiffs made the tactical decision to present evidence of class-wide intentional discrimination and to argue the theory of vicarious liability. They are not entitled at this late date to retry the case on the theory of direct individual liability. The court's holding in *Feeney v. Commonwealth of Massachusetts,* 475 F.Supp. 109 (D.Mass. 1979) (three judge court), *affirmed,* 445 U.S. 901, 100 S.Ct. 1075, 63 L.Ed.2d 317 (1980), is particularly instructive. There, plaintiffs sought to amend their complaint following an adverse decision by the Supreme Court. The district court denied plaintiffs' motion, stating that

> at this very late stage, an interest in orderly litigation cautions against entertaining arguments not previously raised absent very compelling circumstances.... It would be unfair to defendants, after the latter have prevailed on the ... theories originally presented, to allow plaintiff to test yet another theory and to continue on what would become a new law suit ... the time has come to put this particular case to rest.

475 F.Supp. at 111–112 (citations omitted). Late motions to assert additional theories of liability are not favored where the plaintiff had adequate knowledge at the outset of the litigation to plead and litigate those theories and the undue delay results in un-

fair prejudice to defendants. *Johnson v. Trueblood,* 629 F.2d 287, 294–295 (3d Cir. 1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981); *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 492 (3d Cir.1978); *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 81 (2d Cir.1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 970–971 (6th Cir.1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974); *Feeney v. Commonwealth of Massachusetts, supra; Von Wedel v. McGrath,* 100 F.Supp. 434, 436 (D.N.J. 1951), *affirmed,* 194 F.2d 1013 (3d Cir.1952).

In the present case, plaintiffs made the tactical decision to advance class-wide theories rather than an individualized approach. Plaintiffs cannot now retry the case on an alternative theory because of the undue delay and unfair prejudice to the contractor associations and contractor-employers. For these reasons, plaintiffs' motion to amend must be denied.[3]

An appropriate Order will be entered.

---

**3.** By reason of the Court's decision, the Court need not reach the statute of limitations arguments or improper joinder arguments present-

ed by the contractor associations and contractor-employers in opposing the motion to amend.